UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

VERONICA GREEN,
           Plaintiff,

      v.                              CASE NO. 3:14-cv-41 (VAB)

JOAN HILLIARD,
           Defendant.

## RULING ON THE DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Veronica Green, has filed a Complaint against Joan Hilliard, naming her in both her official and individual capacities as an employee[1] of the State of Connecticut. Am. Compl. ¶1, at Caption, at Prayer for Relief, ECF No. 8. She alleges that Ms. Hilliard delayed deciding and ultimately denied her permission to access the Connecticut On-Line Law Enforcement Communications Teleprocessing ("COLLECT") System. *Id.* ¶1. As a result of Ms. Hilliard's decision, Ms. Green's former employer, the City of Bridgeport, refused to rehire her. *Id.* ¶41.

The Complaint alleges a single procedural due process claim under 42 U.S.C. §1983. Am. Compl. at First Cause of Action, ECF No. 8. Ms. Green contends that Ms. Hilliard's actions deprived her of a property and a liberty interest in access to COLLECT and in her job with the City without due process in violation of the Fourteenth Amendment. *Id.* ¶¶1, 121-26; Opp. Br. 19-23, ECF No. 23. She seeks declaratory and injunctive relief, compensatory and punitive damages, as well as costs and attorney's fees under 42 U.S.C. §1983. Am. Compl. ¶1, at Prayer for Relief, ECF No. 8.

---

[1] Ms. Hilliard retired from her position with Connecticut in April 2014. Def.'s Local Rule 56(a)1 Stmt. ¶2, ECF No. 18-18.

Ms. Hilliard has filed a Motion for Summary Judgment on the only claim in the case.  Mot. for Summ. J., ECF No. 18.  For the reasons that follow, the motion is **GRANTED**.

## I.      STATEMENT OF FACTS[2]

The City of Bridgeport employed Ms. Green as a police dispatcher from December 1996 until she was terminated in August 2011.  Def.'s Local Rule 56(a)1 Stmt. ¶1, ECF No. 18-18.  In this position, Ms. Green was authorized and trained as a COLLECT user by the State of Connecticut.  *Id.* ¶¶7, 10-11.  COLLECT is a compilation of various databases, state and federal, which contain information that law enforcement officers need to do their jobs, including arrest records, motor vehicle records, pending warrants, and other similar kinds of information.  *Id.* ¶¶5-6; Def.'s Ex. D, Hayes Aff. ¶4, ECF No. 18-5.

During the time relevant to this lawsuit, Ms. Hilliard was a Connecticut employee whose role was to ensure that Connecticut implemented federal policies governing the use of national crime databases.  Def.'s Local Rule 56(a)1 Stmt. ¶¶2-3, ECF No. 18-18.  She also oversaw the COLLECT system, including system security, authorizing system users, and training authorized users.  *Id.* ¶4.

To obtain access to COLLECT initially, Connecticut required Ms. Green to submit a request for certification by an employer, pass a background check, complete a classroom course, and pass a written test.  Def.'s Ex. D, Hayes Aff. ¶7, ECF No. 18-5.  As part of this certification process, prospective users are given copies of and tested on

---

[2] These facts are based on a review of the pleadings, Local Rule 56(a) Statements, and any responses, as well as exhibits filed by both parties accompanying the Motion for Summary Judgment and related briefing.  Unless noted otherwise, facts described in this section are undisputed or the opposing party has not pointed to any contradictory evidence in the record.

the COLLECT security policy.  *Id.* ¶¶11-12; Def.'s Local Rule 56(a)1 Stmt. ¶11, ECF No. 18-18; *see also* Def.'s Ex. C, System Security Policy, ECF No. 18-4.  To ensure the safety of the officers using the system in the field, as well as for other reasons, this security policy prohibits the use of the system for personal reasons or curiosity.  Def.'s Local Rule 56(a)1 Stmt. ¶¶7*,* 25, ECF No. 18-18; *see also* Def.'s Ex. C, System Security Policy, ECF No. 18-4.  Ms. Green was aware of this security policy and of the fact that she could not share COLLECT information with family members.  Def.'s Local Rule 56(a)1 Stmt.  ¶¶8-11, ECF No. 18-18.

To maintain access to COLLECT, Connecticut required Ms. Green to participate in trainings and pass tests on the contents of these trainings at regular intervals.  Def.'s Local Rule 56(a)1 Stmt. ¶7, ECF No. 18-18; Def.'s Ex. C, System Security Policy, ECF No. 18-4 (noting that COLLECT users must be certified "within the first six months of employment" and "[r]ecertification is required biennially.").  She was also required to abide by COLLECT's security policy.  Hilliard Dep. 14:1-17; Def.'s Local Rule 56(a)1 Stmt. ¶7, ECF No. 18-18.

Ms. Hilliard testified that in her tenure with the State of Connecticut, she applied a "zero tolerance" rule regarding violations of the security policy.  Hilliard Dep. 14:18-15:5, 20:20-21:8.  In evaluating a user for renewed access to COLLECT after a policy violation, Ms. Hilliard relied on the system's security policy and information from the employing law enforcement entity describing the violation. *Id.* at 14:1-15, 20:11-19.

On August 15, 2011, another COLLECT user and friend of Ms. Green, Margo Williams, learned that the Bridgeport police had stopped Ms. Green's son during a drug investigation.  Def.'s Local Rule 56(a)1 Stmt. ¶¶13, 16, ECF No. 18-18; Green Dep.

49:7-12.  Ms. Williams became aware of the stop when the Bridgeport police sought information about Ms. Green's son through COLLECT.  Def.'s Local Rule 56(a)1 Stmt. ¶16, ECF No. 18-18.[3]  Upon learning of the stop, Ms. Williams sent a text message to Ms. Green asking her to call her.  Green Dep. 50:8-11.

During the call that followed, the parties dispute what information Ms. Williams shared with Ms. Green as well as what Ms. Green did with that information.  Ms. Hilliard contends that Ms. Williams told Ms. Green that the police had stopped her son.  Def.'s Local Rule 56(a)1 Stmt. ¶17, ECF No. 18-18.  According to Ms. Hilliard's version of events, after the call, Ms. Green called her son and told him that he was under surveillance and that the police were running his license plate.  *Id.* ¶¶17, 19.  Ms. Green contends that Ms. Williams told her that she should tell her son "to get his ass home," without explaining why she wanted Ms. Green to do so or providing any other details. *Id.* ¶¶20-21; Pl.'s Local Rule 56(a)2 Stmt. ¶17, ECF No. 24; Green Dep. 50:10-25.  After speaking with Ms. Williams, Ms. Green contends that she called her son and told him to come home, without providing him with any more information about why she wanted him to do so.  Def.'s Local Rule 56(a)1 Stmt. ¶18, ECF No. 18-18; Green Dep. 57:11-18. Ms. Green testified that she did not know that the police had stopped her son until he returned home and that she did not know that Ms. Williams had been at work when she spoke to her until after the incident occurred.  Green Dep. 57:19-58:4, 64:2-7.

On August 18, 2011, the City of Bridgeport suspended Ms. Green without pay and, ultimately terminated her on August 24, 2011.  Def.'s Local Rule 56(a) Stmt. ¶12, ECF No. 18-18; Def.'s Ex. E, Letter dated Aug. 18, 2011, ECF No. 18-6 (advising Ms.

---

[3] It is also undisputed that Ms. Green's son "used [her] name" to try to evade a ticket that the officers wanted to give him at the stop.  Def.'s Local Rule 56(a)1 Stmt. ¶21, ECF No. 18-18; Green Dep. 47:18-24.

Green that she was suspended without pay "pending a pre-termination hearing" scheduled for August 22). After a pre-termination hearing, the City sent Ms. Green a letter explaining that it was terminating her because her "conduct and actions [on] August 15, 2011 represents a violation of" certain City work rules and the "Collect System Security mandates." Def.'s Ex. F, Letter dated Aug. 24, 2011, ECF No. 18-7. When the City terminated Ms. Green, Ms. Hilliard disabled her access to COLLECT at Bridgeport's request. Def.'s Local Rule 56(a)1 Stmt. ¶¶27-28, ECF No. 18-18; Def.'s Ex. J, Letter dated Aug. 23, 2011, ECF No. 18-11 (from Bridgeport's Chief of Police to Ms. Hilliard requesting that Ms. Green's access to COLLECT be "revoked immediately").[4]

Under the Collective Bargaining Agreement governing Ms. Green's employment with the City, she and her Union filed a grievance with the Connecticut State Board of Mediation and Arbitration challenging the termination. Pl.'s Local Rule 56(a)2 Stmt. ¶29, ECF No. 24; Pl.'s Ex. 1, Settlement and Last Change Agreement, ECF No. 24-1. While this proceeding was pending, on March 29, 2012, Ms. Green, the Union, and the City entered a settlement agreement in which the City agreed "to reinstate Ms. Green" provided that she obtained COLLECT certification. Pl.'s Ex. 1, Settlement and Last Change Agreement ¶¶3, 4, ECF No. 24-1. Specifically, the agreement provides that

> Ms. Green agrees that she must provide the Director
> of Labor Relations with written proof of her current, valid
> certification to use [COLLECT] from the… COLLECT

---

[4] According to Ms. Hilliard, the City suspended and terminated Ms. Green because it believed that she had shared information from COLLECT with her son, in violation of the strict confidentiality policy governing access to the database. Def.'s Local Rule 56(a)1 Stmt. ¶¶13-15, ECF No. 18-18. Ms. Green contests that she misused COLLECT but does not deny that this event caused her termination. Pl.'s 56(a)2 Stmt. ¶¶13, 15-16, ECF No. 24 ("[T]here has never been an administrative and/or judicial finding that she violated the COLLECT system."). It is undisputed that the City terminated Ms. Williams for violating COLLECT security requirements and that Ms. Williams actually violated those requirements. Def.'s Local Rule 56(a)1 Stmt. ¶23, ECF No. 18-18; Green Dep. 64:8-21.

> Manager prior to her reinstatement.  Failure to provide such
> current, valid certification within sixty (60) days of
> entering into this Agreement, constitutes Ms. Green's
> resignation from her employment with the City, without
> further recourse or remedy.

*Id.* ¶4(a).  The agreement did not obligate the City "to provide a positive recommendation with regards to Ms. Green's attempts to obtain a valid, current certification."  *Id.* ¶8. However, the City also agreed it would not take a negative position on Ms. Green's certification and reserved its right to provide information to Connecticut upon request "with regards to Ms. Green's certification."  *Id.*  The agreement also required that Ms. Green submit to a "complete background check" prior to reinstatement and that she comply with City and COLLECT policies once reinstated.  *Id.* ¶¶4(b)-6, 10.  The agreement provides that failure to comply with its terms, the City's policies, or engaging in COLLECT-related misconduct would result in Ms. Green's termination by resignation. *Id.* ¶10.

As discussed above, Connecticut requires that prospective COLLECT users submit a request from their employer to gain access.  After the settlement agreement was signed, the Chief of the Bridgeport Police refused to request that Connecticut provide Ms. Green access to COLLECT.  Def.'s Local Rule 56(a)1 Stmt. ¶36, ECF No. 18-18; Pl.'s Ex. 2, Letter dated Apr. 25, 2012, ECF No. 24-2; Pl.'s Ex. 3, Letter dated May 3, 2012, ECF No. 24-3; Def.'s Ex. L, Letter dated Apr 20, 2012, ECF No. 18-13.  Ms. Green sought relief from the Connecticut State Board of Labor Relations and, on March 15, 2013, the Board ordered the City's Police Chief to request that Ms. Green be certified as a COLLECT user.  Def.'s Ex. P, *In the Matter of the City of Bridgeport and NAGE, Local RI-200,* Case No. MPP-29,885, Decision and Order 8, ECF No. 18-17.  The Board

concluded that by not requesting that she be certified, the City was breaching the settlement agreement. *Id.* at 6.

On May 3, 2013, the Chief of Police sent Ms. Hilliard a letter requesting that Ms. Green be given access to COLLECT. Def.'s Ex. M, Letter dated May 3, 2013, ECF No. 18-14. In response, Ms. Hilliard sent the Police Chief a letter on June 14, 2013, notifying him that she was scheduling a "meeting" on June 18 "to allow Ms. Green the opportunity to be heard and to provide any additional information." Def.'s Ex. N, Letter dated Jun 14, 2013, ECF No. 18-15. The letter invited Ms. Green and her supervisor to "feel free" to bring pertinent documents. *Id.* It also invited the Police Chief to "bring anyone that [he] fe[lt] [was] needed." *Id.* The letter asked the Police Chief to inform Ms. Green and any other "associated" parties of the date and time of the meeting. *Id.*

In advance of the meeting, Ms. Hilliard obtained documents relating to the August 15, 2011 incident, including an Investigative Report the City had prepared. Def.'s Local Rule 56(a)1 Stmt. ¶37, ECF No. 18-18; *see also* Def.'s Ex. G, City of Bridgeport Office of Labor Relations Investigative Report dated Aug. 23, 2011, ECF No. 18-8. She also had attended portions of the original labor grievance hearings. Def.'s Local Rule 56(a)1 Stmt. ¶37, ECF No. 18-18. She did not hear Ms. Green's testimony at these prior hearings. Hilliard Dep. 34:23-34:5.

Ms. Green brought her attorney to the meeting, who spoke on her behalf. Green Dep. 82:13-21, 83:11-16.[5] She did not bring any documents or witnesses. *Id.* at 87:10-19. Ms. Green objected to the delay in assessing her suitable for COLLECT access but did not object before, during, or after the hearing about any other aspect of the procedure

---

[5] Ms. Green testified that Ms. Hilliard asked her if she wanted to bring legal counsel to the meeting. Green Dep. 87:16-17.

Ms. Hilliard provided before filing this lawsuit.  Def.'s Local Rule 56(a)1 Stmt. ¶49, ECF
No. 18-18.  Ms. Green testified that she wished she had been able to bring documents,
including letters from other individuals, but admitted that she would not have wanted any
witnesses to attend.  Green Dep. 84:8-24, 86:15-18, 87:1-9.  She also testified that she did
not believe Ms. Hilliard was biased against her.  *Id.* at 89:17-21.

Ms. Hilliard denied Ms. Green's request for COLLECT access on January 7,
2014.  Def.'s Ex. O, Letter dated Jan. 7, 2014, ECF No. 18-16 (from Ms. Hilliard to
Bridgeport's Chief of Police, informing him that she was denying the request to recertify
Ms. Green for COLLECT access).

## II.    STANDARD

Courts must "grant summary judgment, if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(a).  The moving party carries the burden of demonstrating
that there is no genuine material dispute of fact by citing to "particular parts of materials
in the record." Fed. R. Civ. P. 56(c)(1)(A)-(B); *Carlton v. Mystic Transp., Inc.*, 202 F.3d
129, 133 (2d Cir. 2000).   A dispute regarding a fact is "'genuine if the evidence is such
that a reasonable jury could return a verdict for the nonmoving party'" and material if the
substantive law governing the case identifies those facts as material.  *Williams v. Utica
Coll. Of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. Am.
Cyanamid Co.,* 158 F.3d 622, 626 (2d Cir. 1998)); *Bouboulis v. Transp. Workers Union
of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 248 (1986)).

In assessing a summary judgment motion, the Court must resolve all ambiguities, including credibility questions, and draw all inferences from the record as a whole in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).

## III.    DISCUSSION

Ms. Green has brought a claim under 42 U.S.C. §1983, which creates a cause of action for money damages for any person who, under color of state law, suffers a deprivation of his or her constitutional "rights, privileges or immunities." Ms. Green claims that Ms. Hilliard has violated her procedural due process rights under the Fourteenth Amendment of the United States Constitution. In pertinent part, the Fourteenth Amendment provides that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the [ ] Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976).

To survive Ms. Hilliard's Motion for Summary Judgment, Ms. Green must demonstrate that a genuine question of material fact exists as to whether (1) Ms. Hilliard acted under color of state law, and (2) as a result of Ms. Hilliard's actions, Ms. Green suffered a denial of her Fourteenth Amendment rights. *See Annis v. Cnty. of Westchester*,

136 F.3d 239, 245 (2d Cir. 1998) (citation omitted).  Because Ms. Hilliard was acting in

her position as a state employee, she was acting under color of state law.  Accordingly,

the dispositive question that remains is whether Ms. Hilliard deprived Ms. Green of her

Fourteenth Amendment rights.

Ms. Green argues two theories of liability.  First, she contends that Ms. Hilliard

deprived her of a constitutionally protected property interest without due process.  Opp.

Br. 13-19, ECF No. 23.  Second, she argues that Ms. Hilliard deprived her of a

constitutionally protected liberty interest to pursue her profession without due process.

*Id.* at 19-23.  Ms. Green raises this second theory for the first time in opposing summary

judgment.[6]

In evaluating these theories, the Court must first determine whether a

constitutionally protected property or liberty interest exists.  *Bd. of Regents of State*

*Colleges v. Roth,* 408 U.S. 564, 570-71 (1972) ("[T]o determine whether due process

requirements apply in the first place, we must look not to the 'weight' but to the nature of

the interest at stake.  We must look to see if the interest is within the Fourteenth

Amendment's protection of liberty and property.") (citation omitted); *Narumanchi v. Bd.*

*of Trs.,* 850 F.2d 70, 72 (2d Cir. 1988) ("The threshold issue is always whether the

plaintiff has a property or liberty interest protected by the Constitution.") (citation

omitted).  Second, the Court also must determine whether Ms. Hilliard deprived Ms.

Green of that property or liberty interest.  *See Local 342, Long Island Pub. Serv.*

*Employees v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994) ("In order to

sustain an action for deprivation of property without due process of law, a plaintiff must

---

[6] Ms. Hilliard correctly points out that Ms. Green did not articulate this liberty-based theory in her
Complaint.

'first identify a property right, [and] second show that the state has deprived him of *that* right.'") (quoting *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir. 1990) (per curiam)).

Finally, if a protected property or liberty interest exists and Ms. Hilliard deprived Ms. Green of that interest, the Court then may proceed to analyze "what process was due, and whether the government provided such minimum process." *Looney v. Black,* 702 F.3d 701, 706-07 (2d Cir. 2012) (citation omitted) (in the context of a protected property interest); *see also Mathews,* 424 U.S. at 332-35 (explaining how to determine what process is due when a plaintiff has been deprived of a constitutionally protected liberty or property interest).

As explained further below, the Court finds that Ms. Green has failed to demonstrate that Ms. Hilliard deprived her of a constitutionally protected property or liberty interest.  Accordingly, summary judgment must be **GRANTED**.

### A.  Ms. Green's Alleged Property Interest

Ms. Green alleges that she has two possible property interests: (1) her access to the COLLECT system and (2) her job with the City of Bridgeport.  Am. Compl. ¶¶121-22, ECF No. 8.  To determine whether either of these alleged property interests are protected by the Fourteenth Amendment, the Court must look to state law or "understandings that secure certain benefits."  *Roth,* 408 U.S. at 577; *see also Looney,* 702 F.3d at 706.  To qualify as a constitutionally protected property interest, a plaintiff must show that he has "a legitimate claim of entitlement" to the alleged property interest as opposed to "a unilateral expectation."  *Roth,* 408 U.S. at 577.  In other words, a plaintiff may have a constitutionally cognizable property interest if there are "rules or

mutually explicit understandings that support his claim to entitlement." *Perry v. Sindermann,* 408 U.S. 593, 601 (1972) (citation omitted).

### 1.   COLLECT Access as Property Interest

Ms. Green suggests in her Complaint that her access to COLLECT is a constitutionally protected property interest that is akin to a license or certificate allowing her to pursue her profession.  Am. Compl. ¶¶47-50, ECF No. 8; *see also* Green Dep. 75:2-3 (testifying that her access to COLLECT was enabled by a "NCIC COLLECT certificate.").[7]  Ms. Hilliard denies that access to COLLECT is a license or certificate. Def.'s Br. 14 n.6, ECF No. 18-18.  The Court agrees that such access is not a license or certificate, but rather is a prerequisite to employment like a background check or a security clearance.  But as will be explained further below, even if access to COLLECT could be considered a license or certificate, Ms. Green had no constitutionally protected property interest in such access.

Access to COLLECT is not the type of status or privilege that courts have found represents a constitutionally protected property interest.  As noted above, to constitute a constitutionally protected property interest, a claim to a benefit or status, in this case access to COLLECT, must "stem from an independent source" of state or federal law. *Roth,* 408 U.S. at 577.  Here, there is no statute, regulation, or other "independent" legal source that gives rise to any property interest on Ms. Green's part in COLLECT access. Connecticut state law provides municipal police departments, not specific employees or

---

[7] Contrary to Ms. Hilliard's argument, Def.'s Br. 15, ECF No. 18-1, Ms. Green challenges both the initial revocation of her access COLLECT, *see* Am. Compl. ¶¶20-21, 124, 126, ECF No. 8, as well as Ms. Hilliard's failure to reinstate that access, *see id.* ¶124, 126.  Although Ms. Green does not directly address the initial revocation in her summary judgment briefing, the Court does so because she raises it in her Complaint.

individuals, access to COLLECT.[8]  Conn. Gen. Stat. §7-281a ("Each municipal police department shall have access to, and use of, the [COLLECT] System without charge.") Thus, a prospective user must have an offer of employment from a law enforcement agency that is authorized to access COLLECT even to be considered.  *See* Def.'s Ex. C, System Security Policy, ECF No. 18-4 ("Individuals that are authorized to access COLLECT must be employed by a law enforcement or a criminal justice agency.").

In this respect, COLLECT access is unlike the kind of license or certificate that courts have found to constitute a property interest, because one cannot be considered for COLLECT access without a job offer from an authorized law enforcement agency.[9]  A license or certificate, on the other hand, gives its holder the right to pursue a livelihood or activity outside of the context of a particular job.  *See e.g.*, *Bell v. Burson,* 402 U.S. 535, 539 (1971) (in the context of the denial of a driver's license, noting that "[o]nce licenses are issued… their continued possession may become essential in the pursuit of a livelihood"); *Adoption Servs. Of Connecticut, Inc. v. Ragaglia,* 178 F. Supp. 2d 139, 146 (D. Conn. 2001) ("If a plaintiff can assert 'a legitimate claim of entitlement' to such a license, a license affecting one's right to pursue an occupation may be 'property' protected by the Due Process clause.") (citations omitted).

There also are no regulations or state laws governing how Ms. Hilliard determines whether to grant or deny municipal employees access to COLLECT.[10]  The only guidance that exists to assist Ms. Hilliard in determining whether individuals may access

---

[8] It also provides certain procedures for the public to gain access.

[9] A "certificate" is defined as a "document certifying the bearer's status or authorization to act in a specified way." *Black's Law Dictionary* 271 (10th ed. 2014).  A "license" is defined as a "privilege granted by a state or city upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." *Id.* at 1059.

[10] Although there are federal regulations that apply to the administration of COLLECT generally, *see generally* 28 C.F.R. §§20.20-20.21, they only apply to the state or municipalities acting as employers. Because Ms. Hilliard never employed Ms. Green, they do not apply to her.

COLLECT derives from custom or practice of the State.  For instance, undisputed record evidence indicates that, as a matter of practice or custom, prospective COLLECT users must pass a background check, participate in training, take and pass tests on the substance of that training, and abide by COLLECT's security policy.  A user's violation of the security policy may result in removal of that individual's access to the database, again as a matter of custom or practice.

These practices indicate that, in order to gain access to COLLECT, individual employees like Ms. Green, as a matter of practice or custom, essentially must pass a background check as well as take training classes and pass a test on their content.  Both of these requirements show that access to COLLECT is not like a license or certificate and is not the type of status or privilege that can possibly give rise to a constitutionally protected property interest.

Individuals cannot, as a matter of law, have a constitutionally protected right to passing a background check.  *See Dep't of Navy v. Egan,* 484 U.S. 518, 528 (1988) (holding that as a matter of statutory interpretation, an administrative entity, the Merit Systems Protection Board, did not have the authority to review a decision revoking or denying security clearance and noting that "[i]t should be obvious that no one has a 'right' to a security clearance.  The grant of a clearance requires an affirmative act of discretion on the part of the granting official."); *see also Hill v. Dep't of Air Force,* 844 F.2d 1407, 1411-12 (10th Cir.) (holding that plaintiff did not have a constitutionally protected property interest under the Fifth Amendment in obtaining a security clearance because the granting of a security clearance provided "temporary permission" for access to "national secrets" and was a discretionary judgment "as to the suitability of the

recipient for such access" and "[t]he notion of an individual property right in access to the nation's secrets… is utterly inconsistent with those principles."), *cert. denied,* 488 U.S. 825 (1988); *accord Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990) ("There is no right to maintain a security clearance."), *cert. denied*, 499 U.S. 905 (1991); *Williams v. Reilly,* 743 F. Supp. 168, 172 (S.D.N.Y. 1990) (holding that a plaintiff had no constitutionally cognizable property right in his security clearance under the Fifth Amendment).

Similarly, individuals cannot have a constitutionally protected property interest in a passing grade on an eligibility test. *See e.g., Charry v. Hall,* 709 F.2d 139, 144 (2d Cir. 1983) (noting that where an applicant fails an examination necessary to the granting of a license, "he will not have any property interest entitled to due process protection").

Even if Ms. Green's access to COLLECT could be construed as a license or certificate, the Court finds that she did not have a constitutionally protected property interest in that license or certificate.  Whether a plaintiff has a constitutionally cognizable property interest in a license or certificate turns on how much discretion the licensor has in making granting, denying, or revoking the same.  *See Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir. 1985) (finding no constitutionally protected property interest in a "certificate of location approval" because the defendants had "wide discretion" in reviewing applications for such a certificate); *see also Spinelli v. City of New York,* 579 F.3d 160, 169 (2d Cir. 2009) (noting that no protected property interest exists "where the licensor has broad discretion to revoke the license") (citation omitted).  The more discretion a decision maker may exercise in granting, denying, or revoking a license or certificate, the less legitimate a plaintiff's expectation is in obtaining or keeping the same.

In other words, if a public entity has "substantial discretion" to decide whether to grant a license, there can be no legitimate claim of entitlement and, therefore, no constitutionally protected property interest in that license. *Sanitation and Recycling Indus., Inc. v. City of New York,* 107 F.3d 985, 995 (2d Cir. 1997).

In this case, there is no statute, regulation or other legal guidance on the standards Ms. Hilliard should apply in determining whether to revoke, grant, or deny an individual's access to COLLECT. Without any such guidance, the decision to grant COLLECT access is purely discretionary and, therefore, cannot create a constitutionally cognizable property interest. *See Mordukhaev v. Daus,* 457 F. App'x 16, 19-20 (2d Cir. 2012) (finding that where the City of New York had "significant discretion" to deny taxi licenses "based on subjective criteria," a plaintiff had no property interest in an ungranted taxi license); *Fresh Start Substance Servs., LLC v. Galvin,* 599 F. Supp. 2d 279, 283-84 (D. Conn. 2009) (holding that plaintiff lacked a property interest in a license to operate a methadone clinic because the licensor exercised "its judgment and discretion" in determining whether to grant the license); *see also Allocco Recycling, Ltd. v. Doherty,* 378 F. Supp. 2d 348, 371-72 (S.D.N.Y. 2005) (finding that the amount of discretion that a license grantor possessed in denying permits was "too uncertain to support a constitutionally protected property interest").

Accordingly, for many reasons, Ms. Green has no constitutionally protected property interest in access to COLLECT.

### 2.   Job with Bridgeport as Property Interest

Ms. Green also argues that her job with the City of Bridgeport constitutes a constitutionally protected property interest based on her settlement agreement, which she

contends provides her with a genuine expectation that her job would be restored.  Opp. Br. 13-14, ECF No. 23.  She further argues that she had a property interest in her employment with the City of Bridgeport because the City's right to terminate her under the settlement agreement was limited to "good cause."  Opp. Br. 13, ECF No. 23.  The Court disagrees.

Applicants for government jobs generally do not have a property interest in the positions they seek unless they can demonstrate a legitimate claim of entitlement to the position.  *MacFarlane v. Grasso,* 696 F.2d 217, 221-22 (2d Cir. 1982) ("Ordinarily, an applicant for government employment does not have a property interest in the position he seeks.").  Similarly, a current public employee may have a property interest in continued employment if the employee cannot be discharged absent "just cause."  *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) (finding that a collective bargaining agreement gave rise to a constitutionally protected property interest because the agreement "guaranteed that [the plaintiff] could not be fired without just cause").

However, a public employee lacks a constitutionally protected property interest in continued employment if such employment is "probationary" or contingent on meeting certain requirements or prerequisites, such as passing a background check.  *See Russell v. Hodges,* 470 F.2d 212, 216-17 (2d Cir. 1972) (finding that a trainee whose employment was "specifically conditioned on his being able to pass the physical examination at the end of the training period" did not have a constitutionally protected property interest in his continued employment); *Nastahowsky v. Bd. of Educ. of Greenwich,* No. 3:12cv105(WWE), 2013 WL 3824271, at *3 (D. Conn. July 23, 2013) (finding no constitutionally protected property interest where an public employee's employment was

"probationary" and he failed a background check after he was hired); *Foxworth v. Pennsylvania State Police,* 228 F. App'x 151, 152-55 (3d Cir. 2007) (finding that a state trooper applicant who received a job offer conditional on him passing an investigation of his criminal history had no constitutionally protected property interest in that job).

In this case, the settlement agreement conditioned Ms. Green's offer of employment on her re-obtaining access to COLLECT.  The agreement did not guarantee that Ms. Green would be approved for COLLECT access, nor did it obligate Ms. Hilliard to act in any way with respect to Ms. Green's application to access COLLECT.  Indeed, neither she nor any representative of the State of Connecticut was party to the settlement agreement.  The agreement, therefore, did not render Ms. Green's employment secure or certain but rather hinged it on a contingency.  The existence of this contingency renders her claim to her job with the City too unilateral or insufficiently legitimate to constitute a constitutionally protected property interest.  *See Dorfmont*, 913 F.2d at 1404 (finding no due process claim because plaintiff had "no entitlement to continued employment at a job that requires a security clearance").  The fact that the settlement agreement limited the circumstances in which Ms. Green could be terminated is irrelevant to this inquiry, because she had not yet fulfilled the preconditions that enabled the City to rehire her under the agreement.

### B.  Ms. Green's Alleged Liberty Interest

Ms. Green also argues in opposing summary judgment that Ms. Hilliard deprived her of a protected liberty interest to pursue her chosen profession.  Opp. Br. 19, ECF No. 23.  She argues that Ms. Hilliard has permanently banned her from accessing COLLECT

and, therefore, that she cannot work for any entity as a police dispatcher.  *Id.* at 21.  This argument is rejected for two reasons.

First, Ms. Green raises this theory too late for the Court to consider it.  Her Complaint does not refer to a liberty interest.  She raises this theory for the first time in opposing summary judgment.  Accordingly, the Court cannot consider it.  *See Lyman v. CSX Transp., Inc.,* 364 F. App'x 699, 701-02 (2d Cir. 2010) (affirming district court's decision not to consider claims raised for the first time in opposition to summary judgment) (citing *Greenidge v. Allstate Ins. Co.,* 446 F.3d 356, 361 (2d Cir. 2006) and *Syracuse Broad. Corp. v. Newhouse,* 236 F.2d 522, 525 (2d Cir. 1956)); *Casseus v. Verizon New York, Inc.,* 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment.") (collecting cases).

But even assuming the liberty interest arguments were timely, Ms. Green has failed to show that she has a constitutionally protected liberty interest in COLLECT access or her job with the City of Bridgeport.  "A liberty interest protected by the Due Process Clause may arise from two sources—the Due Process Clause itself and state law."  *Purnell v. Lord,* 952 F.2d 679, 684 (2d Cir. 1992) (citations omitted).  The Second Circuit has recognized the existence of a constitutionally protected liberty interest in pursuing one's chosen profession free from governmental inference.  *See Donato v. Plainview-Old Bethpage Cent. Sch. Dist.,* 96 F.3d 623, 630 (2d Cir. 1996) ("[O]ne of the many freedoms [liberty] encompasses is the freedom 'to engage in any of the common occupations of life.'") (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923)).  However, such a right is not implicated in this case.

"[I]t is well established that the denial, suspension, or revocation of a security clearance cannot form the basis of a due process claim." *Al-Kaysey v. L-3 Servs., Inc.*, No. 11-CV-6318(RRM)(LB), 2013 WL 5447830, at *5 (E.D.N.Y. Sept. 27, 2013) (collecting cases). The denial of Ms. Green's access to COLLECT does not implicate a constitutionally protected liberty interest because it does not completely preclude her from pursuing a given profession. Ms. Green concedes in her own briefing that the Constitution does not protect or recognize a liberty interest in a particular job, but rather only in one's ability to pursue a chosen profession. Opp. Br. 21, ECF No. 23; *accord Braswell v. Shoreline Fire Dep't.,* 622 F.3d 1099, 1103 (9th Cir. 2010) (noting that to establish a violation of a liberty interest to work in a particular profession, "Plaintiff must show that his dismissal 'destroyed [his] freedom to take advantage of other employment opportunities' and that, because of the dismissal, it is 'virtually impossible for [him] to find new employment in his chosen field.'") (quoting *Engquist v. Or. Dept of Agric.,* 478 F.3d 985, 998 (9th Cir. 2007) (alterations in the original)); *Conrad v. Cnty. of Onondaga Examining Bd. for Plumbers,* 758 F. Supp. 824, 828 (N.D.N.Y. 1991) (noting that "a person is not deprived of 'liberty' when he or she is denied one job but remains as free as before to seek another" and that a liberty interest might be implicated where a rejection "had the practical effect of precluding [a plaintiff] from working in [his] chosen career, and not simply from filling a particular job") (citation omitted).

Here, Ms. Green has shown that in this particular instance, she failed to regain her former job at the City of Bridgeport. But she has failed to show that she will be unable to secure a job as a police dispatcher at any law enforcement agency. Ms. Hilliard testified that Ms. Green's conduct resulted in a denial of her access to COLLECT in this particular

instance.  While she also testified that she applied a "zero tolerance" rule to COLLECT

policy violations, she no longer works for the State of Connecticut.  Mr. Hayes has not

testified that Ms. Green is permanently banned from accessing COLLECT or that he will

apply such a "zero tolerance" rule.  There also are no policies, guidelines or statutes that

require Connecticut to ban Ms. Green from the system permanently.

Moreover, the record is devoid of evidence indicating that Ms. Green sought to

obtain a job at another law enforcement agency and failed to do so.  Ms. Hilliard testified

that the decision of another law enforcement agency to hire someone who had violated a

COLLECT policy while employed by a different law enforcement agency was at their

discretion and not hers.  She testified that, in such a situation, the law enforcement

agencies would discuss the violation and decide whether to employ that individual.

Hilliard Dep. 38:2-39:4 ("when someone loses her access to COLLECT, if they go to

another police department, that police department will normally notify or contact the

police department that they left, and it's between those two entities that they discuss any

past inciden[t]s or things like that.").  She also testified that she had never had this

situation occur and was not sure how she would handle it.  *Id.* at 39:5-40:7.  Thus, even

construing all reasonable inferences in Ms. Green's favor, the Court can only conclude

that it is unknown whether Ms. Green could be hired by another law enforcement agency

in Connecticut.  The law requires more certainty that Ms. Green is barred from her

profession permanently to create a constitutionally protected liberty interest.

Because Ms. Green has no liberty interest in accessing COLLECT, she cannot

have a liberty interest in a job requiring such access.  *See Dorfmont*, 913 F.2d at 1403 ("If

there is no protected interest in a security clearance, there is no liberty interest in

employment requiring such clearance.") (under the Fifth Amendment); *Chesna v. U.S. Dep't of Defense*, 850 F. Supp. 110, 119 (D. Conn. 1994) ("Inasmuch as the petitioner has no entitlement to a security clearance, the petitioner cannot claim that he has a right to his current employment" that required that clearance) (under the Fifth Amendment).[11]

## IV. CONCLUSION

For all of the reasons noted above, Ms. Green has failed to show that Ms. Hilliard deprived her of a constitutionally protected liberty or property interest. Because "[t]he requirements of procedural due process apply only to the deprivation of interest encompassed by the Fourteenth Amendment's protection of liberty and property," Ms. Hilliard owed Ms. Green no process. *Roth,* 408 U.S. at 569. Therefore, Ms. Hilliard's Motion for Summary Judgment, ECF No. 18, is **GRANTED**. The Clerk is directed to enter judgment for the Defendant and close the case.

**SO ORDERED** at Bridgeport, Connecticut this 11th day of December 2015.

 /s/ Victor A. Bolden              
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[11] Ms. Green does not explicitly claim in her brief or Complaint that Ms. Hilliard's actions deprived her of a constitutionally protected interest in her reputation, also known as a stigma plus claim. However, to the extent she intended to raise such a claim, it must fail. Courts have recognized that reputational harm (the stigma) caused by a government actor can substantiate a procedural due process claim if "coupled with the deprivation of some tangible interest or property right (the plus), without adequate process.'" *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (citation and internal quotation marks omitted)). As noted above, the record does not indicate that Ms. Green is unable to obtain any government job in the law enforcement field as a result of Ms. Hilliard's actions. Accordingly, she cannot have a stigma plus claim. *See O'Neill v. City of Auburn*, 23 F.3d 685, 692-93 (2d Cir. 1994) (to sustain a stigma plus claim, "governmental allegations" must "go 'to the very heart of [the employee's] professional competence' and threaten to 'damage his professional reputation,' significantly impeding his ability to practice his profession.") (citations omitted and alteration in original); *see also Skiff v. Colchester Bd. of Educ.*, 514 F. Supp. 2d 284, 296-97 (D. Conn. 2007) (granting summary judgment on a stigma plus claim because none of defendant's statements created "a roadblock to future employment"); *Federico v. Bd. of Educ. of Pub. Schs. of Tarrytowns*, 955 F. Supp. 194, 200-01 (S.D.N.Y. 1997) ("to recover on his [stigma plus] due process claim, plaintiff must demonstrate not only that he has had difficulty finding employment but that such difficulty resulted from the stigma placed upon him by defendants" and granting summary judgment because plaintiff "adduced no evidence… setting forth the steps that he has endeavored to take to secure employment since his termination.").